IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **JUSTICE SMITH** | § | |
| | § | |
| **v.** | § | **NO. 4:26-CV-00055-ALM-BD** |
| | § | |
| **ACIMA LEASING, LLC** | § | |

**ORDER AND REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pro se plaintiff Justice Smith sued Acima Leasing, LLC, under the Fair Credit Reporting Act and for defamation, alleging that she "entered into a rent-to-own lease-purchase agreement with Acima for furniture" and that Acima reported inaccurate information concerning that agreement to consumer reporting agencies. Dkt. 13-2 at 2 (operative complaint). Acima moved to compel arbitration based on an arbitration clause in the agreement between it and Smith or, alternatively, to dismiss Smith's complaint for failure to state a claim. Dkt. 15; *see* Dkts. 16 (response), 18 (reply). That motion superseded an earlier motion to compel arbitration or dismiss. Dkt. 10. The court will dismiss the earlier motion as moot and recommend that the later motion be granted to the extent it requests an order compelling arbitration and dismissed to the extent it requests dismissal of Smith's complaint.

**LAW**

Written agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The act in which that provision appears "reflects the fundamental principle that arbitration is a matter of contract" and "places arbitration agreements on an equal footing with other contracts." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "Consequently, the first question in any arbitration dispute must be: What have these parties agreed to?" *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024). If the parties have agreed to submit their dispute to arbitration, the court has no discretion; it must "direct the parties to proceed to arbitration on issues as to which an arbitration agreement

has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). In that circumstance, a stay of district-court proceedings is required, 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024), and the court should not reach a motion to dismiss or any other motion directed to the merits of a party's claim, *see Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).

## DISCUSSION

To compel a case to arbitration, the party seeking to arbitrate must first show that a valid agreement to arbitrate exists. *Emily's Place, Inc. v. Regions Bank*, 764 F. Supp. 3d 485, 490 (N.D. Tex. 2025). Once the movant meets that burden, the burden shifts to the party opposing arbitration to show that the arbitration clause is invalid. *Id.*

Acima met its burden. Smith did not meet hers.

"[A]rbitration agreements are simply contracts." *Coinbase*, 602 U.S. at 148. As such, they are enforced according to their terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). General principles of contract law determine whether a dispute falls within the scope of an arbitration clause. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989). But "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Id.* at 476.

The arbitration clause in the parties' rent-to-own agreement covers "all 'Disputes' involving the parties," and "Disputes" has "the broadest possible meaning." Dkt. 15-1 at 9. It

> includes all claims even indirectly related to [Smith's] application and agreements with [Acima]. This includes claims related to information [Smith] previously gave [Acima]. It includes all past agreements. It includes, as may be applicable, any additional periods, extensions, renewals, and plans. It includes claims related to damaged property, buyout, reinstatement, loss, damage, warranty, maintenance, collection, possession, privacy, and customer information. It includes claims related to setting aside this Clause. It includes claims about the Clause's validity and scope. It includes claims about whether to arbitrate.

*Id.*

2

"When a contract is expressed in unambiguous language, its terms will be given their plain meaning and will be enforced as written." *Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 822 (5th Cir. 2003). As noted, Smith's claims revolve around information that Acima allegedly reported to consumer reporting agencies about Smith's obligations to it under the contract. *See* Dkt. 13-2 at 2. Those claims are "related to [Smith's] . . . agreement[] with [Acima]," *see* Dkt. 15-1 at 9, so they are subject to arbitration.

Smith does not deny that the arbitration agreement exists or that her claims fall within its scope. *See* Dkt. 16. She instead argues that Acima sold its rights under the contract and, with them, its right to enforce the arbitration agreement. *Id.* at 1–2. But the court cannot decide whether she is right about that because the arbitration agreement delegates questions about whether to set it aside, its "validity and scope," and "whether to arbitrate" to the arbitrator. Dkt. 15-1 at 9.

When parties "agree to arbitrate 'gateway' questions of 'arbitrability'" like those, courts do not disturb their agreement. *Rent-A-Ctr.*, 561 U.S. at 68–69. Just as a court should not reach the merits of a dispute if the parties agreed to arbitrate, a court should not determine whether a dispute is arbitrable if the parties agreed to delegate that question to the arbitrator. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

Whether Acima retained its right to arbitrate after it sold the contract is a question of "whether to arbitrate" that is committed to the arbitrator. *See* Dkt. 15-1 at 9. And neither party argues that the delegation clause is invalid, *see Rent-A-Ctr.*, 561 U.S. at 70, so the court should defer to the arbitrator, refrain from answering that question, *First Options*, 514 U.S. at 943, stay the case, and compel the parties to arbitrate their dispute, *see Smith*, 601 U.S. at 475–76.

## CONCLUSION AND RECOMMENDATION

It is **ORDERED** that Acima's first motion to compel arbitration or dismiss, Dkt. 10, is **DISMISSED** as moot.

It is **RECOMMENDED** that:

1) Acima's second motion to compel arbitration or dismiss, Dkt. 15, be **GRANTED** to the extent it asks the court to compel the parties to arbitrate and **DISMISSED** to the extent it requests dismissal of Smith's complaint;

2) the case be **STAYED** pending arbitration; and

3) the parties be ordered to notify the court of the outcome of arbitration no later than seven days after its completion.

\*   \*   \*

Within 14 days after service of this report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1).

A party is entitled to a de novo review by the district court of the findings and conclusions contained in this report only if specific objections are made. *Id.* § 636(b)(1). Failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*; 28 U.S.C. § 636(b)(1) (extending the time to file objections from 10 to 14 days).

So **ORDERED** and **SIGNED** this 1st day of May, 2026.

_____
Bill Davis
United States Magistrate Judge

4